IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DANIEL JIMENEZ, #26454-077 | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13CV5 |
| | § | CRIMINAL ACTION NO. 4:09CR155 (1) |
| | § | |
| UNITED STATES OF AMERICA | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Movant Daniel Jimenez filed a motion to vacate, set aside, or correct sentence pursuant to

28 U.S.C. § 2255 with the assistance of counsel, alleging constitutional violations concerning his

Eastern District of Texas, Sherman Division conviction. The motion was referred to the undersigned

United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for

the disposition of the case pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of

Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I. FACTUAL BACKGROUND

The factual background is taken from the Government's Response, which, in turn, is gathered

from the presentence report and trial transcripts:

> Jimenez came to the attention of law enforcement as part of a larger investigation
> conducted by the DEA into drug trafficking in the Eastern District of Texas,
> including Denton, Dallas, and Collin Counties. As part of this investigation, co-
> defendant Paul Lovell Webb was interviewed and stated that he purchased cocaine
> from co-defendant Mark Allen Rodriguez. Webb also stated that Jimenez worked
> with Rodriguez selling cocaine. Webb had given Jimenez several thousand dollars
> to purchase cocaine from Rodriguez. Webb stated that he purchased approximately
> 15 kilograms of cocaine from Jimenez. Sometime thereafter, Webb gave Rodriguez

1

$270,000, through an unknown associate but Rodriguez reported that the money had been seized by law enforcement. Webb also stated that Jimenez was the supplier of cocaine to co-defendant Patrick Cantu. Overall, Webb admitted to purchasing 500 to 600 kilograms of cocaine from Jimenez.

On July 30, 2009, law enforcement equipped a confidential source with a recording device prior to a meeting with Jimenez at Jimenez's residence in Rockwall, Texas. The confidential source informed Jimenez that he needed more money because of Webb's arrest. The confidential source was instructed to introduce Webb's cocaine customers to Jimenez. Jimenez agreed to help the confidential source and agreed on a price of $26,500 for a kilogram of cocaine.

On August 5, 2009, a DEA agent working undercover along with a confidential source met Jimenez at a restaurant in Mesquite, Texas. During that meeting, Jimenez stated he had sold Webb several kilograms of cocaine in the past. The undercover agent was able to negotiate the price of kilogram of cocaine. On August 7, 2009, the undercover agent received a call from Jimenez, who stated that he would be able to deliver ten kilograms of cocaine.

On August 10, 2009, law enforcement arrested Patrick Cantu. Cantu admitted that he sold Jimenez approximately 50 to 100 kilograms of cocaine over an extended period of time. Cantu sated that during the last transaction with Jimenez, he had been robbed of 33 kilograms of cocaine.

Jimenez was arrested at his residence on August 11, 2009, but no drugs were found in his possession. After being arrested and informed of his rights, Jimenez told law enforcement that he was a drug dealer, and good at it. Jimenez admitted to selling cocaine to numerous individuals in the past. He admitted to making a sale of cocaine as recently as August 3, 2009. Jimenez stated that prior to his arrest and conviction in 1994 for drug trafficking, he had stashed away approximately $2.5 million dollars. He admitted to stealing cocaine from Cantu. Jimenez advised that he had met Webb in a half-way house in 2004. Jimenez admitted that he had at one time stolen $272,00 from Webb.

## II. PROCEDURAL BACKGROUND

Movant was charged with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 on February 11, 2010. Before trial, counsel for Movant attempted to limit the introduction of evidence of Movant's past convictions for drug trafficking. He urged the court to

limit the introduction of these convictions because the Government already had sufficient evidence of Movant's intent from the testimony of his co-conspirators. He reasoned that the introduction of Movant's prior convictions would be prejudicial. The court overruled Movant's motion. The Government then stated that it did not intend to offer into evidence Movant's prior convictions for bank fraud and money-laundering while in prison – unless Movant chose to testify.

On February 16, 2010, Movant proceeded to trial where the Government introduced evidence that Movant had been convicted of drug trafficking in 1990 and 1994. During his case-in-chief, Movant's common-law wife, Priscilla Barbosa, testified that she was aware that Movant had been incarcerated for two prior drug offenses. Barbosa said that she began her relationship with Movant while he was in prison for drug-related offenses. They had known each other as children, and she corresponded with him while he was in prison. After Movant was released from a half-way house, he moved into Barbosa's home.

Barbosa testified that Movant complied with his supervised release conditions and worked at an auto body shop. She said that Movant did not have a substantial amount of cash or the ability to make any large payments after his release from prison in 2004. In 2006, however, Movant contributed funds for Barbosa's restaurant. She believed the funds were from Movant's savings and money he had borrowed. Barbosa said they leased the restaurant space for one year before opening the business. Movant paid the $2500 down payment and then the $1500 monthly lease for the property. She said they did not open the restaurant immediately because they did not have the cash to do so. Barbosa testified that in the next year, they remodeled, purchased $20,000 of equipment, and eventually opened the restaurant in 2007. Movant was involved in every aspect of the daily running of the restaurant. However, having never made a profit, they closed the restaurant in 2008.

Barbosa said that they would sometimes fail to pay their household bills because of the cost of the restaurant. She and Movant would rotate shifts at the restaurant, and Movant did not have any unexplained absences.

Barbosa further testified that Movant bought a home in Rockwall, Texas, in 2005, after her home in Wylie was foreclosed. She believed that Movant obtained a loan for the house and did not pay any cash as a down payment. By the time they closed the restaurant, Barbosa said that she and Movant were substantially in debt.

On cross-examination by the Government, Barbosa said that Movant obtained a loan for the Rockwall house thirteen months after being released from prison, where he had been imprisoned for thirteen years. She said that she was aware that Movant had been convicted for bank fraud and money-laundering while he was in prison. She said the Rockwall home cost $190,000, and that they made significant improvements in 2007, including new cabinets, a new TV room from a garage conversion, outside stonework, and a shop costing $10,000.

Barbosa said that she worked 40 hours a week at a doctor's office from 2003 to 2006 at $16.50 per hour. Movant was making $400 each week while working at the body shop. In 2006, Barbosa received $20,000 in a divorce settlement and she quit her job, using the divorce settlement money to live on and pay business expenses. After the restaurant closed, Movant did not go back to work, and Barbosa did not question where he got his money, claiming that she did not know he had returned to dealing drugs.

The court gave the following instruction concerning the evidence of Movant's prior convictions:

Similar Acts: You have heard evidence of acts of the defendant [that] may be similar to those charged in the First Superseding Indictment, but or which were committed on other occasions. You must not consider any of this evidence in deciding if the defendant committed the acts charged in the First Superseding Indictment. However, you may consider this evidence for other, very limited purposes.

If you find beyond a reasonable doubt from other evidence in this case that the defendant did commit the acts charged in the First Superseding Indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine: whether the defendant had the state of mind or intent necessary to commit the crime charged in the First Superseding Indictment; or whether the defendant had a motive or the opportunity to commit the acts charged in the First Superseding Indictment; or whether the defendant acted according to a plan or in preparation for commission of a crime; or whether the defendant committed the acts for which he is on trial by accident or mistake.

These are limited purposes for which any evidence of other similar act may be considered.

On February 19, 2010, the jury found Movant guilty as charged, and found him responsible for five kilograms or more of a mixture containing a detectable amount of cocaine. The district court sentenced Movant to life imprisonment on July 8, 2010. The United States Court of Appeals for the Fifth Circuit affirmed his conviction on August 11, 2011. *United States v. Jimenez*, 436 F. App'x 378, 378-79 (5th Cir. 2011). In its opinion, the Fifth Circuit held that the evidence was sufficient for the jury to convict Movant of Count One. On January 17, 2012, the Supreme Court of the United States denied Movant's petition for writ of certiorari.

Movant filed the present motion pursuant to § 2255, asserting numerous issues that he claims entitle him to relief. He alleges that the trial court erred by using facts to enhance his sentence that were not charged in the indictment. Further, he claims that trial counsel was ineffective when he:

1.      Failed to stipulate to the element of intent to the conspiracy charge;

2.      Failed to argue that evidence of Movant's prior convictions for drug trafficking were

not probative;

3.      Failed to object to improper cross-examination by the Government; and

4.      Failed to put on additional evidence in support of the defense.

Additionally, Movant claims that his appellate counsel was ineffective when she:

1.      Failed to argue that Movant's prior convictions were not probative; and

2.      Failed to argue that a portion of the Government's cross-examination of a defense witness was improper.

The Government filed a Response, asserting that Movant's claims are not supported by the record or are otherwise without merit. Movant filed a Reply.

### III. § 2255 PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). A movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-01 (5th Cir. 1992). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

### IV. TRIAL COURT ERROR

Movant claims that the trial court erred because "priors" were used to enhance his sentence when they were not charged in the indictment. The United States Supreme Court has held that the harmless error analysis that should be used on federal habeas review is the test under *Kotteakos –*

"whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1722, 123 L. Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)). Under this standard, "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722 (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 732, 88 L. Ed.2d 814 (1986)). Here, Movant must show actual prejudice. *Id*.

Specifically, Movant complains that "the enhanced penalty he received pursuant to the Government's 21 U.S.C. § 851 enhancement notice is unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000)." However, the Supreme Court of the United States held that, while the indictment must set forth each element of the crime that is charged, it need not set forth factors relevant only to the sentencing of one found guilty of the criminal charge. *Almendarez-Torres v. United States*, 523 U.S. 224, 228, 118 S. Ct. 1219, 1223, 140 L. Ed.2d 350 (1998). Movant even concedes that the claim is foreclosed by existing Supreme Court precedent. The failure to charge Movant's "priors" in the indictment is not error as it is relevant only to the sentencing of one found guilty of the charged crime. *Id*. Movant has not shown the district court erred. Moreover, Movant fails to show that he suffered prejudice or that the district court's alleged error was not harmless. *Brecht*, 507 U.S. at 637, 113 S. Ct. at 1722. This issue is without merit.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Movant claims that his trial counsel was ineffective in several instances.

**Legal Standard**

A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence.  *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).  To succeed on a claim of ineffective assistance of counsel, a movant must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984).  The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. 466 U.S. at 690, 104 S. Ct. at 2066. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance.  *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).  *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982);  *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).

Secondly, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  Movant must "affirmatively prove," not just allege, prejudice. *Id*., 466 U.S. at 693, 104 S. Ct. at 2067.   If he fails to prove the prejudice component, the court need not address the question of counsel's performance.  *Id*., 466 U.S. at 697, 104 S. Ct. 2052.

**Failure to Stipulate to Element of Intent**

Movant claims that trial counsel was ineffective for failing to stipulate to the element of intent in the charge for conspiracy to possess with intent to distribute cocaine. He asserts that, had counsel stipulated to the element of intent, the Government would not have been able to introduce the overly prejudicial extrinsic evidence of past convictions for drug trafficking.

To prove a conspiracy to possess with intent to distribute cocaine, the Government must show that (1) there was an agreement to violate the narcotics law; (2) each defendant knew of the agreement and intended to join the conspiracy, and (3) each defendant voluntarily participated. *United States v. Lopez*, 979 F.2d 1024, 1029 (5th Cir. 1992). Evidence of a similar criminal act may be admitted for the purpose of showing knowledge, intent, motive, or scheme, where such element is an essential element of the offense. *United States v. Lawrence*, 480 F.2d 688, 690 (5th Cir.1973).

Movant relies on *United States v. Webb*, 625 F.2d 709 (5th Cir. 1980) as support for his claim. In *Webb*, the defendant was charged with shooting at a Government helicopter in violation of 18 U.S.C. § 32. *Id*. The Fifth Circuit held, on appeal, that (1) where intent is not inferable from the nature of the act charged and (2) the defendant fails to give enforceable pretrial assurances that he intends not to dispute criminal intent, (3) the Government's case-in-chief may include extrinsic evidence as would be admissible if intent was actively contested. *Id*. at 710. In *Webb*, the admission of the evidence was not unfairly prejudicial because it countered any claim that the shooting was accidental. *Id*.

Movant cites to *Webb* to support his claim that, had counsel stipulated to the intent element, the Government would have been procedurally barred from introducing evidence of his prior drug trafficking convictions. However, the *Webb* court held that admission of evidence of similar offense

for purposes of showing intent would be reversible error where intent is not an essential element of the offense charged. *Lawrence*, 480 F.2d at 690. As in Movant's case, participating in a drug conspiracy is a specific intent crime. *United States v. Burroughs*, 876 F.2d 366, 368-69 (5th Cir. 1989). As a specific intent crime, the Government must prove that Movant voluntarily and intentionally violated the law. *Id*. at 369. Extrinsic evidence of past drug trafficking crimes is admissible to prove intent because the intent required for conspiracy to distribute is similar. *United States v. Devine*, 934 F.2d 1325, 1345-46 (5th Cir. 1991).

Furthermore, Movant assumes that the Government would have accepted Movant's admission of intent. A party is not required to accept a judicial admission, but may insist on proving the fact. *Old Chief v. United States*, 519 U.S. 172, 187-188, 117 S. Ct. 644, 653, 136 L. Ed.2d 574 (1997). The Fifth Circuit noted that the "reason for the rule is to permit a party 'to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.'" *Parr v. United States*, 255 F.2d 86 (5th Cir. 1958), *cert. denied*, 358 U.S. 824, 79 S. Ct. 40, 3 L.Ed.2d 64 (1958).

Additionally, counsel submitted an affidavit in response to Movant's claims, stating, in part:

I have had the opportunity to review Defendant's motion and memorandum of law and state the above issues all relate to the conduct of the trial itself, including but not limited to trial strategy and were arrived at after due consideration by myself and the Defendant together.

Count 1: The intent element was an essential element of the offense as we chose not to stipulate to that after determining it would be detrimental to stipulate to one of the essential elements of the case.

. . .

In short, all the decisions were made with the objective of acquittal in mind and after consulting with Defendant on the available options and the pros and cons of each.

Such decisions were made with Defendant's knowledge and agreement.

As shown, trial counsel for Movant provides that his decision to not concede to the intent element at trial was matter of trial strategy. Movant fails to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. However, assuming *arguendo* that it was error for counsel not to admit to intent prior to trial, Movant fails to present any evidence showing that the Government would have accepted a stipulation to the intent element. Moreover, Movant fails to meet the second prong of the *Strickland* standard - prejudice. In drug offense cases, evidence of the defendant's prior drug involvement is admissible to demonstrate his knowledge and intent concerning the crime charged. *United States v. Olguin*, 643 F.3d 384, 389-90 (5th Cir. 2011). Any prejudicial effect is significantly outweighed by the probative value when the court gives a curative instruction and there is independent evidence of the defendant's involvement in the enterprise. *Id*. at 390. Here, the court gave the jury an instruction on "similar acts," which directly tracked the Fifth Circuit Pattern Jury Instructions. Additionally, the Fifth Circuit held that there was sufficient other evidence presented at trial to support Movant's conviction. *Jimenez*, 436 F. App'x at 378-79.

In his Reply, Movant cites to other cases in which the Fifth Circuit noted that if a defendant had made an admission of intent, the Government's admission of a subsequent incident would have been error. *See, e.g., United States v. Yeagin*, 927 F.2d 798, 801-03 (5th Cir. 1991); *United States v. Ponce*, 8 F.3d 989, 993 (1993); *United States v. Templeton*, 624 F.3d 215, 221-22 (5th Cir. 2010. A review of the record shows that Movant admitted to being a drug dealer, and was "good at it." He admitted to selling cocaine to numerous individuals in the past. He admitted to making a sale of cocaine as recently as August 3, 2009. He stated that prior to his arrest and conviction in 1994 for

drug trafficking, he had stashed away approximately $2.5 million dollars.  He admitted to stealing

cocaine from Cantu and to stealing $272,000 from Webb.  Even without considering the testimony

from co-defendants and evidence obtained from audio recordings, Movant's own confessions make

the Government's admission of his prior convictions harmless.  Thus, if counsel erred in failing to

admit intent, Movant still fails to show that the prejudicial effect of the admission of his priors was

significantly outweighed by the probative value in light of the other evidence.  He also fails to

overcome the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy.  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

In sum, the court gave the jury an instruction on "similar acts," which directly tracked the

Fifth Circuit Pattern Jury Instructions.  Additionally, the Fifth Circuit held that there was sufficient

other evidence presented at trial to support Movant's conviction.   Even if counsel's performance

could be considered deficient, Movant fails to show that there is a reasonable probability that, but

for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

 *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.   He fails to show prejudice.

**Failure to Argue that Prior Drug Convictions Should Be Excluded**

Movant claims trial counsel was ineffective for failing to argue the merits of admitting

extrinsic evidence of past bad acts in light of *United States v. Jackson*, 339 F.3d 349 (5th Cir. 2003).

He asserts that counsel erred by not arguing the ruling in  *Jackson* when he sought to limit the

introduction of Movant's past drug convictions - that counsel should have made the court aware of

this case.  Movant claims he did not meet the criteria outlined in *Jackson*  – that the probative value

of the evidence did not substantially outweigh any undue prejudice.

In *Jackson*, the Fifth Circuit held that the evidence of the defendant's prior conviction for the

theft of watches did not meet the second prong of the test for allowing extrinsic evidence of past crimes into evidence under *United States v. Beechum*, 582 F.3d 898 (5th Cir. 1978), because Jackson's charged offense at the time was transporting stolen goods in interstate commerce and conspiracy to transport stolen goods in interstate commerce. *Id*. at 357. In *Beechum*, the second prong requires that the probative value of the extrinsic evidence substantially outweigh any undue prejudice. *Id*. at 354, *Beechum*, 583 F.2d at 911. The *Jackson* court held that the probative value of the evidence of Jackson's prior conviction for stealing watches was outweighed by undue prejudice. *Jackson*, 339 F.3d at 356-57. It based its decision on (1) the fact that there was other substantial evidence of intent to enter an agreement to join the conspiracy, (2) Jackson's assertion that he was not involved in the conspiracy, and (3) the fact that the prosecutor in *Jackson* invited the jury to consider Jackson's character by asserting that Jackson was "local talent" in opening statements. *Id*.

In the instant case, Movant entered a plea of not guilty to the charged offense. As a result, intent was a material issue at his trial. *United States v. Pompa*, 424 F.3d 800, 805 (5th Cir. 2005) (intent is always material in a drug trafficking case, and the defendant puts intent into issue with a plea of not guilty). A review of the record shows that counsel for Movant emphasized in opening and closing arguments that the Government witnesses were not credible and that the evidence was insufficient to convict Movant on any of the elements of the offense, including intent. Counsel for Movant argued in the alternative that Movant was entrapped. The record also shows that the prosecutor, at closing, when referencing Movant's statements admitting that he was a drug dealer, was referring to direct trial testimony – not Movant's character. Furthermore, in his affidavit, trial counsel for Movant stated that he had "adequately addressed the need to exclude Defendant's priors

at pretrial."

Any error in the admission of evidence of prior convictions for drug distribution against a person charged with drug distribution is harmless where there is ample other evidence of guilt, including audio and video tapes from controlled buys in which the defendant could be identified. *United States v. McCall*, 553 F.3d 821, 830 (5th Cir. 2008). In Movant's case, "ample other" evidence included Movant's own admissions, audio tapes of discussions concerning drug buys, and testimony from co-defendants stating that Movant was involved in the sale of drugs. Thus, any error by counsel that may have resulted in the admission of evidence of Movant's prior convictions is harmless. Even if counsel performed deficiently, Movant fails to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He fails to show prejudice.

**<u>Failure to Object to Government's Questions Concerning Movant's Past Convictions</u>**

Movant next asserts that counsel was ineffective for failing to object to questions directed to Barbosa concerning Movant's prior convictions for money-laundering and bank fraud while he was in prison. Movant claims that, had counsel objected, the court would have "at least issued an immediate cautionary instruction." He claims this error was prejudicial because the other evidence against him was not overwhelming. Trial counsel for Movant submitted an affidavit, stating that he had "adequately covered our objections to improper questions at pretrial and in all objections made thereto."

The record shows that the Government's cross-examination of Barbosa was to impeach her testimony where she talked of Movant's good character, his hard work ethic, and good credit history. Additionally, the record shows that the Government presented substantial evidence of Movant's guilt

14

- his own admissions to law enforcement, the audio tape of his negotiations to sell cocaine, and direct testimony of his co-defendants. Any error in admitting extrinsic evidence of past bad acts is harmless where there is "ample" evidence of the defendant's guilt, as in this case. *McCall*, 553 F.3d at 830. Additionally, the Fifth Circuit specifically held that there was sufficient evidence to support Movant's conviction. *Jimenez*, 436 F. App'x at 378-79. Movant fails to show that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065. He also fails to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694, 104 S. Ct. at 2068.

**Failure to Present Additional Defense Evidence**

Movant contends that counsel was ineffective for failing to acquire and present documentary evidence supporting Barbosa's testimony that she and Movant were "struggling to pay the bills," and that Movant was leading a "law abiding life." "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 2997) (the failure to present evidence does not constitute deficient performance if counsel could have concluded, for tactical reasons, that attempting to present such evidence would be unwise). Any evidence of ineffective assistance of counsel fails where the evidence to be discovered is so similar and cumulative that the failure to find and present it would not prejudice the result. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In this case, Barbosa testified as to her recollection of the financial history she and Movant

shared. She testified they were unable to pay their bills at times, and ultimately, had to close the restaurant. Barbosa also said she was unaware that Movant was involved in drug sales again. Documentary evidence supporting her testimony would have been merely cumulative. *Id*. Movant fails to show deficient performance or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Id*.

## Failure to Call Additional Witnesses

Movant next asserts that counsel was ineffective for failing to call additional witnesses. "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985). A petitioner must overcome a strong presumption that his counsel's decision in not calling a particular witness was a strategic one. *Murray v. Maggio, Jr.*, 736 F.2d 279, 282 (5th Cir. 1984). Where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance are viewed with great caution. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3534, 82 L. Ed.2d 839 (1984). Moreover, to succeed on the claim, Petitioner must have shown that had counsel investigated, he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on Petitioner's behalf. *Alexander*, 775 F.2d at 602; *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir. 1984), *cert. den.*, 469 U.S. 1041 (1984). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue

16

in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

In the instant case, Movant does not specify the particular witnesses counsel should have called. He says counsel should have called bank or restaurant employees, but fails to specifically name a certain witness. Movant also fails to state what the potential witnesses would have testified to, or whether they were willing and able to testify. Thus, Movant fails to meet the requirements enunciated in *Alexander*. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *Ross,* 694 F.2d at 1011-12; *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. The court notes that in his Reply to the Government's Response – for the first time – counsel for Movant named several potential witnesses, but still failed to include affidavits from them stating what they would have testified to, and that they were willing and able to testify on Movant's behalf. He fails to meet his burden. *Alexander*, 775 F.2d at 602.

Movant also fails to overcome the presumption that trial counsel was not acting on a sound trial strategy. *Id.*, 466 U.S. at 689, 104 S. Ct. 2065. Unsupported assertions are not sufficient to overcome the strong presumption that the decision to not call the witnesses was not a trial strategy. *Alexander*, 775 F.2d at 602; *Murray*, 736 F.2d at 282. Movant fails to show a reasonable probability existed that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Movant claims that his appellate counsel was ineffective for failing to raise certain issues.

### Legal Standard

The Fifth Circuit has held that to prevail on a claim of ineffective assistance of counsel on appeal, the petitioner must make a showing that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991), *citing Strickland*, 466 U.S. at 687, 104 S. Ct. at 2065.  In a counseled appeal after conviction, the key is whether the failure to raise an issue worked to the prejudice of the defendant. *Sharp*, 930 F.2d at 453.  This standard has been affirmed by the Supreme Court.  *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed.2d 756 (2000) (holding that the petitioner must first show that his appellate attorney was objectively unreasonable in failing to find arguable issues to appeal, and also a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal). *See also Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000); *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Furthermore, an appellate counsel's failure to raise certain issues on appeal does not deprive an appellant of effective assistance of counsel where the petitioner did not show trial errors with arguable merit. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973).  Appellate counsel is not required to consult with his client concerning the legal issues to be presented on appeal. *Id*. at 1197. An appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits – every conceivable issue need not be raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 749, 103 S. Ct. 3308, 3311-12, 77 L. Ed.2d 987 (1983).

**Failure to Argue *Jackson* on Appeal**

Movant claims that appellate counsel was ineffective for failing to argue the merits of *United States v. Jackson* on appeal. *See Jackson*, 339 F.3d 349. As discussed above, however, Movant's reliance on *Jackson* is misplaced. Any error in admitting the evidence of Movant's past drug convictions was harmless because of the other substantial evidence of his guilt. Additionally, the court instructed the jury regarding similar acts.

Appellate counsel submitted an affidavit in response to Movant's claims, stating, in part:

> As appellate counsel, I reviewed the transcripts of all proceedings. As to Defendant Jimenez's prior convictions and the Court's ruling on the Motion in Limine, there were no meritorious issues to raise on appeal. As the District Court noted, the Fifth Circuit case law is clear that the prior drug cases may be introduced on the issue of intent when the defendant pleads not guilty to Conspiracy to Possess with Intent to Distribute.
> . . .
>
> After reviewing the transcripts, I believe there is no meritorious issue in regards to the District Court's ruling on the Defense's Motion in Limine.

An appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits – every conceivable issue need not be raised on appeal. *Jones*, 463 U.S. at 749, 103 S. Ct. at 3311-12. The *Jackson* issue is without arguable merit; thus, appellate counsel cannot be ineffective for failing to raise it. *Hooks*, 480 F.2d at 1197. Moreover, Movant fails to show that, but for his appellate counsel's failure to file a merits brief raising this issue, he would have prevailed on appeal. *Robbins*, 528 U.S. at 285, 120 S. Ct. at 764.

**Failure to Argue Error Concerning Movant's Past Crimes on Appeal**

Movant next asserts that appellate counsel was ineffective for failing to raise the issue of the alleged improper cross-examination of Barbosa – also discussed above. This court concluded that

any alleged improper cross-examination of Barbosa was harmless in light of the substantial evidence of Movant's guilt. Additionally, appellate counsel provided an affidavit in which she stated that she did not believe it was a meritorious issue to bring on direct appeal. She noted:

> The government did not introduce the money laundering conviction during its case in chief, so there was no violation of the court's ruling in regards to 404(b) evidence. The government questioned a defense witness in regards to Defendant Jimenez's money laundering conviction after the witness testified about Jimenez's good character, hard work ethic, and good credit history. The conviction was raised as impeachment of a defense witness.

An appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits – every conceivable issue need not be raised on appeal. *Jones*, 463 U.S. at 749, 103 S. Ct. at 3311-12. This issue is without arguable merit; thus, appellate counsel cannot be ineffective for failing to raise it. *Hooks*, 480 F.2d at 1197. Even if appellate counsel's performance could be considered deficient, Movant fails to show that, but for his appellate counsel's failure to file a merits brief raising this issue, he would have prevailed on appeal. *Robbins*, 528 U.S. at 285, 120 S. Ct. at 764. This issue is without merit.

## VII. CONCLUSION

Movant fails to show that the trial court erred in failing to charge Movant's "priors" in the indictment because his "priors" were only relevant to the sentencing phase if Movant was found guilty of the charged crime. *Almendarez-Torres*, 523 U.S. at 228, 118 S. Ct. at 1223. He also fails to show a reasonable probability existed that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Finally, Movant fails to show issues of arguable merit that appellate counsel should have raised. *Hooks*, 480 F.2d at 1197. He also fails to show that, but for his appellate counsel's failure to file

a merits brief raising the stated issues, he would have prevailed on appeal. *Robbins*, 528 U.S. at 285, 120 S. Ct. at 764. He fails to show prejudice from either trial counsel's or appellate counsel's representation. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. For these reasons, Movant's motion should be denied.

## VIII. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, it is respectfully recommended that the court, nonetheless, address whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04, 146 L. Ed.2d 542 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37, 123 S. Ct. 1029, 1039, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully recommended that the court find that Movant is not entitled to a certificate of appealability.

## IX.  RECOMMENDATION

It is accordingly recommended that Movant's motion for relief under 28 U.S.C. § 2255 be denied and the case dismissed with prejudice.  It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to

factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 24th day of February, 2016.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE